UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEVEN BROTHERS PAINTING, INC., a Michigan corporation and SEVEN BROTHERS COATINGS, LLC, a Michigan limited liability company,

     Plaintiffs,

v.

PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 2 OF THE INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO, and ROBERT GONZALES, an individual,

     Defendants.
               /

CASE NO. 09-12506

HON. MARIANNE O. BATTANI

## ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION

Now before the Court is Plaintiffs' Motion for Partial Reconsideration of the Court's Order Granting Defendants Painters and Allied Trades District Council No. 22, International Union of Painters and Allied Trades, AFL-CIO (the Union) and Robert Gonzales' Motion to Dismiss. The Court has reviewed the motion and brief in support, and finds oral argument should not be permitted. See E. D. Mich. LR 7.1(h)(2). For the reasons that follow, Plaintiffs' motion is **DENIED**.

**I. PROCEDURAL HISTORY**

The Court heard oral argument on Defendants' Motion to Dismiss on February 17, 2011. At the conclusion of the hearing, the Court granted the motion, in its entirety, from the bench. Plaintiffs contest the decision as to their claim for declaratory relief and their claims of defamation and tortious interference. Because the Court issued its ruling from the bench, a brief statement of the relevant facts follows.

## II. STATEMENT OF FACTS

Defendant Roberto Gonzales was an organizer for Defendant Union during the relevant time frame. Plaintiff Seven Brothers Painting, Inc. (Painting) and Plaintiff Seven Brothers Coating LLC (Coatings) are local painting companies that are headquartered in the same building and have common ownership. Sokol Vushaj, an owner of Coatings, is part owner of Painting along with his brother, Kanto Vushaj. (Doc. No. 11, at ¶¶ 1-1, 11-12.)

Prior to May 2007, Painting was a signatory on a multi-employer collective bargaining agreement (CBA) with the Union. (Doc. No. 47, CBA.) Painting terminated the CBA effective May 31, 2007. (Doc. No. 11 at ¶ 2.)

Coatings filed its LLC papers with the State of Michigan on December 17, 2007. (Id.) Coatings entered into a collective bargaining agreement with another local office of the International Union of Painters and Allied Trades, AFL-CIO, not Defendant Union. On August 11, 2008, Coatings became bound to a collective bargaining agreement with Defendant Union by executing a "me too" agreement. Consequently, Coatings agreed to "abide by the wages, fringe benefits, and all other terms, conditions and provisions of the CBA." (Doc. No. 47, Ex. B.)

These parties were involved in several National Labor Relations Board (NLRB) charges in the months leading up to the filing of this law. In April 2009, the Union filed an unfair labor charge against Coatings. (Doc. No. 47, Ex. C.) The Union alleged that Coatings violated its CBA and was discriminating in hiring in order to discourage union membership. According to the Union, Coating routed work through Painting, which the Union asserted was Coatings' alter ego. (Id.) The Union withdrew the charge in July 2009.

## II. STATEMENT OF FACTS

Defendant Roberto Gonzales was an organizer for Defendant Union during the relevant time frame. Plaintiff Seven Brothers Painting, Inc. (Painting) and Plaintiff Seven Brothers Coating LLC (Coatings) are local painting companies that are headquartered in the same building and have common ownership. Sokol Vushaj, an owner of Coatings, is part owner of Painting along with his brother, Kanto Vushaj. (Doc. No. 11, at ¶¶ 1-1, 11-12.)

Prior to May 2007, Painting was a signatory on a multi-employer collective bargaining agreement (CBA) with the Union. (Doc. No. 47, CBA.) Painting terminated the CBA effective May 31, 2007. (Doc. No. 11 at ¶ 2.)

Coatings filed its LLC papers with the State of Michigan on December 17, 2007. (Id.) Coatings entered into a collective bargaining agreement with another local office of the International Union of Painters and Allied Trades, AFL-CIO, not Defendant Union. On August 11, 2008, Coatings became bound to a collective bargaining agreement with Defendant Union by executing a "me too" agreement. Consequently, Coatings agreed to "abide by the wages, fringe benefits, and all other terms, conditions and provisions of the CBA." (Doc. No. 47, Ex. B.)

These parties were involved in several National Labor Relations Board (NLRB) charges in the months leading up to the filing of this law. In April 2009, the Union filed an unfair labor charge against Coatings. (Doc. No. 47, Ex. C.) The Union alleged that Coatings violated its CBA and was discriminating in hiring in order to discourage union membership. According to the Union, Coating routed work through Painting, which the Union asserted was Coatings' alter ego. (Id.) The Union withdrew the charge in July 2009.

(Doc. No. 47, Ex. D.)

On June 11, 2009, Coatings filed an unfair labor practice, alleging the Union had engaged in harassing behaviors and selective enforcement practices against Coatings. Further, Coatings claimed that the Union violated the CBA, engaged in selective enforcement by refusing to bring actions against companies that engaged in improper subcontracting practices and commencing a 23meritless action against Coatings. (Doc. No. 47, Ex. E.) This charge was withdrawn August 2009. (Doc. No. 47, Ex. F.)

On July 23, 2009, while Coating's charge still was pending, the Union filed another unfair labor practice charge, alleging Painting and Coating were a single employer and that Painting was subject to the CBA signed by Coatings and the Union. (Doc No. 47, Ex. G.) The charge was withdrawn in January 2010. (Doc. No. 47, Ex. H.)

The day after the Union filed its charge, Plaintiffs filed their complaint. In their amended complaint, they alleged that Defendants have made numerous false statements about Painting, which have resulted in lost business. In Count I, they sought a declaratory judgment that no alter ego status exists between the two Plaintiffs. In Count II, Plaintiffs allege that Defendants knowingly made false, disparaging statements to third parties (Count II). In Count III, Plaintiffs rely on the same conduct to support a claim of tortious interference (Count III). The dismissal of the other causes of action in their amended complaint–violation of the CBA (Count IV), and violations of the NLRA and federal common law duties of fair representation (Count V) are not at issue in this motion.

### III. STANDARD OF REVIEW

Pursuant to E.D. Mich. LR 7.1(h)(3), to obtain the requested relief, the movants must demonstrate: (1) the Court and the parties have been misled by a palpable defect, and (2) the correction of that defect will result in a different disposition of the case. A "palpable defect" is an error which is obvious, clear, unmistakable, manifest or plain. Fleck v. Titan Tire Corp., 177 F. Supp.2d 605, 624 (E. D. Mich. 2001); Marketing Displays, Inc. v. Traffix Devices, Inc., 971 F. Supp. 262, 278 (E. D. Mich. 1997) (citation omitted).

### IV. ANALYSIS

#### A. DECLARATORY RELIEF

The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction a federal court 'may' give a declaratory judgment, a power permissive, not mandatory." Grand Trunk Western R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 325 (6th Cir. 1984); 28 U.S.C. § 2201(a). Under the Declaratory Judgment Act, judges are empowered to decide cases "only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough." United Pub. Workers of Am. v. Mitchell, 330 U.S. 75, 89-90 (1947). "The declaratory judgment plaintiff bears the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy." Progressive Tech. in Lighting, Inc. v. Lumatech Corp., No. 1:96-cv-918, 1998 WL 119508 (W.D. Mich. Jan. 22, 1998) (citing Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985)).

Plaintiffs asked the Court to issue a declaratory judgment as to their status as independent businesses. Defendants' motion to dismiss the Declaratory Judgment Act claim required the Court to distinguish "between [an] actual controvers[y] and [an] attempt[

] to obtain [an] advisory opinion[ ] on the basis of a hypothetical controvers[y]." Kardules v. City of Columbus, 95 F.3d 1335, 1343-44 (6th Cir. 1996). Here, the Court found no case or controversy existed. Notably, the Union was unsuccessful in the proceedings before the NLRB that challenged the Plaintiffs' relationship, prompting it to withdraw the charges. Further, given the NLRB's position on the issue, (see Doc. No. 59, Ex. B), the Court concludes Plaintiffs have no fear of further legal action as the facts now exist. Plaintiffs' observation that there is no mechanism to prevent the Union from filing similar charges does not alter the Court's conclusion. The presence or absence of such a mechanism does not impact the analysis. The NLRB has made its position abundantly clear. Therefore, the Court finds no basis for altering its decision to decline to exercise jurisdiction.

### B. STATE LAW CLAIMS

Plaintiffs assert that the Court erred in addressing the state law claims under summary judgment standards. Despite Plaintiffs' characterization of Defendants' motion as one to dismiss for failure to state a claim, and therefore centered on the adequacy of the pleadings, the Court notes that Defendants moved for dismissal under three rules–Rule 12(b)(1) (lack of subject matter jurisdiction), Rule 12(c) (judgment on the pleadings) and Rule 56 (summary judgment). In addition, Rule 12(d) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(d). When a motion is converted, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(d). Here, the parties presented numerous exhibits, which were considered by the Court.

5

In reviewing those exhibits, the Court viewed the evidence in the light most favorable to Plaintiffs. Consequently, in assessing the merits of Defendants' motion, the Court remained mindful that where the evidence in this case created an inference supporting Plaintiffs' theory of the case, the inference had to be credited.

### 1. Defamation

According to the allegations in support of Plaintiffs' defamation claim, Gonzales and the Union made false and defamatory statements about Painting regarding two projects for which Painting submitted a bid: the Milford Fire Station and the Ann Arbor Municipal Center. Plaintiffs further alleged that Defendants contacted contractors and advised them not to use Painting because it had issues or problems with prevailing wages. (Doc. No. 11, Am. Compl., ¶¶ 15-19.) Plaintiffs maintained that these statements were false, and the Union knew they were false.

In their motion, Defendants challenged whether Plaintiffs could present admissible evidence supporting malice and actual damages. The Court dismissed the claim based on the sufficiency of the evidence.

In <u>Linn v. Plant Guard Workers, Local 114</u>, 383 U.S. 53, 55 (1966), the Supreme Court held "that where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court does have jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him." After balancing the "frankness" necessitated by a labor debate and the threat of state libel suits, the Court adopted the standards articulated in <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 280 (1964), a decision that limited state remedies "to those instances in which the complainant can show that the defamatory statements were

circulated with malice and caused [ ] damage." Linn, 383 U.S. at 65.

The Court finds that the conduct at issue occurred in the context of a labor dispute. The mere fact that the Union's view of Plaintiffs' relationship was not adopted by the NLRB does not alter the Court's characterization. Accordingly, the Court considers whether the governing standard is met.

### a. Milford

The Court concluded that Plaintiffs cannot, as a matter of law, show actual damages as to the Milford project because Painting was awarded the Milford job. Therefore, the Court properly dismissed the claim. To the extent that Plaintiffs claim that Painting may have suffered unrevealed damage, their theory lacks factual support. Because Plaintiffs have no evidence of damages such that a jury could decide the issue without resorting to rank speculation or conjecture, this claim fails as a matter of law under Lynn.

### b. Ann Arbor

As to the Ann Arbor Projection, Plaintiffs assert that the Union made false and defamatory statements to the Project Manager for Clark Construction, the general contractor for the Ann Arbor Project. Plaintiffs provided an email regarding the project, which reads, "I am sending you this email to inform you about the painting award for the Ann Arbor Municipal Center." (Doc. No. 59, Ex. G.) Beneath this sentence, the email was blacked out and anything underneath could not be read. The email, dated May 21, 2009, provided no basis for inferring defamation led to the selection of another company for the job.

In their response brief, Plaintiffs informed the Court that the blackened portion of the email referenced "prevailing wage issues" as being part of the reason Painting did not get

the job and also identified the provider of the documents as District Council #22. Because this portion of the email could not be read, and Plaintiffs did not present a legible copy of the email or admissible evidence to support their assertion of the obliterated content, the Court could not credit Plaintiffs' argument.

To some extent, Plaintiffs corrected this deficiency in their request for reconsideration, in that they submitted a legible email which reads as follows: "Prevailing wages and other issues are some reasons (Document were provided by Painters District Council 22)." (Doc. No. 64, Ex. F.) Nevertheless, the email, as well as the other evidence offered by Plaintiffs, fail to create a genuine issue of material fact. Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); Sperle v. Michigan Dept. of Corrections, 297 F.3d 483, 495 (6th Cir. 2002). Plaintiffs' failure to supply an affidavit or declaration based on personal knowledge renders the evidence they did supply incompetent under Rule 56. For example, in responding to the motion, Plaintiffs asserted that the facts upon which the defamation claim was based were specified in Plaintiffs' response to Defendants' First Set of Interrogatories. (Doc. No. 59, Ex. J.) Answers to interrogatories must meet the requirement of Rule 56(e) that evidence offered in opposition to a motion for summary judgment must be made on personal knowledge. Thus, Plaintiffs were required to show "affirmatively that the [person who responded to the interrogatories] is competent to testify to the matters set forth therein." Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996); Wiley v. United States, 20 F.3d 222, 225–226 (6th Cir. 1994). They did not.

Moreover, even if the Court considered the email, Plaintiffs have no evidence to

support the New York Times "actual malice" standard. "Actual malice" is established when a plaintiff can demonstrate that the defendant published the statement with knowledge of its falsity or with reckless disregard for whether it was false or not. See, e.g., Sullivan, 376 U.S. at 280. The presence of "actual malice" is measured at the time the statement was made, here in May 2009. Id. at 286.

It is undisputed that at the time Defendants made the statements, they were pursuing their assertion that Painting was the alter ego of Coatings and that Coating was routing work through Painting. Gonzalez signed a declaration that this charge was "true to the best of [his] knowledge and belief." (Doc. No. 47, Ex. C.) The form included the warning that "wilful false statements on [the] charge" could be punished by fine and imprisonment. (Id.) Defendants did not withdraw the charge until July 2009, after the email was sent to Painting's potential customers. Although Defendants did not prevail on a second charge that Plaintiffs were a single employer, this evidence, generated after the statements were made, creates no inference that Defendants advanced the statements that Painting had to pay prevailing wages with knowledge or reckless disregard of the accuracy. The charge was made in light of facts that provided some basis for Defendants' assertions, even though Defendants did not prevail at the NLRB.

### 2. Tortious Interference

In Health Call of Detroit v. Atrium Home & Health Care Services, Inc., 706 N.W.2d 843, 848-49 (Mich. Ct. App. 2005), the state appellate court, addressed a claim of tortious interference with a business relationship or expectancy, stating:

> The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable

>contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

In their request for partial reconsideration, Plaintiffs argue at the outset that the Court erred in granting summary judgment on the tortious interference claim because Defendants only argued preemption grounds in their motion. The Court observes that Defendants did raise the sufficiency of the pleading and the evidentiary support in their reply brief. Although Plaintiffs were not afforded the opportunity to respond to those arguments in writing, Plaintiffs did address the evidence at oral argument. Moreover, much of the evidence relevant to the claim was provided to the Court by Plaintiffs.

### a. Milford

The Court is not persuaded that these circumstances require reconsideration because the resolution of the motion remains the same. First, Plaintiffs conceded that the facts and documents offered in support of their defamation claim serve as the basis of their tortious interference claim. This acknowledgment renders their claim as to the Milford project subject to judgment as a matter of law inasmuch as the Court already held that they cannot establish damages. Under Michigan law, damage is an element of the cause of action. Therefore, Plaintiffs' request for reconsideration fails to persuade the Court that a different disposition of the case is necessary.

### b. Ann Arbor

Again, in responding to the dispositive motion, Plaintiffs presented no admissible

evidence to support their contention that Defendants interfered with the Ann Arbor Municipal Center award. Even if the Court considers the evidence Plaintiffs provided in conjunction with their reconsideration motion, Plaintiffs cannot survive the motion to dismiss because the claim is preempted under San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-45 (1959) (holding that if a claim brought under state law alleges conduct that arguably is subject to § 7 or § 8 of the National Labor Relations Act, courts must defer to exclusive competence of NLRB in order to avoid state interference with national policy).

Assuming the Union engaged in activity aimed at Clark Construction in order to force it to cease doing business with Paintings, that claim is preempted. Grayhawk, LLC v. Indiana/Kentucky Regional Council of Carpenters, Local Union No. 64, No. 3:07-CV-272-S, 2009 WL 5169821 (W.D. Ky. Dec. 20, 2009) (finding an interference with contract claim stemming "entirely from the allegedly false statements made by the defendants" was preempted). The NLRA prohibits secondary boycotts under particular circumstances, including the circumstances involving these parties. The Act makes it an unfair labor practice for a union or its agent to "threaten, coerce, or restrain" any person engaged in commerce or in an industry affecting commerce where the purpose is "forcing or requiring any person to," among other things "cease doing business with any other person." 28 U.S.C. § 158(b)(4)(ii)(B). Here, the allegation is that the Union exerted pressure on Clark Construction, with whom the Union had no dispute, to force Clark Construction to stop dealing with Painting, an employer with whom the Union did have a dispute. See e.g. George v. Nat'l Ass'n of Letter Carriers, 185 F.3d 380, 383 (5th Cir. 1999). Therefore, the tortious interference claim is "arguably" subject to the provisions of the NLRA and preemption under the Garmon doctrine. The fact that Paintings is not a union shop does

11

not render Garmon inapplicable.  The claims here have arisen in the context of a labor dispute. See Ruzicka Elec. and Sons, Inc. v. Int'l Broth. of Elec. Workers, Local 1, AFL-CIO, 427 F.3d 511, 519 (8th Cir. 2005) (discussing pressure brought to bear on a third party by the union to force an employer to comply with union demands).

Therefore, even if Plaintiffs were able to advance admissible evidence of interference, the claim is preempted.  The outcome is not altered, and the standards required for reconsideration are not met.

**IV.  CONCLUSION**

After a thorough review of Plaintiffs' motion, the Court finds that they have failed to carry their burden of proving a palpable defect requiring correction.  Therefore, Plaintiffs' motion is **DENIED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date: June 10, 2011

12

**CERTIFICATE OF SERVICE**

    Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

s/Bernadette M. Thebolt
Case Manager
